# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD BERBAUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  1:21-cv-01004-STA-jay |
| | ) | |
| AMCO INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER PARTIALLY GRANTING AND PARTIALLY DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Richard Berbaum filed this action against Amco Insurance Company in the Circuit Court of McNairy County, Tennessee, alleging breach of contract and violation of the bad faith statute, Tenn. Code Ann. § 56-7-105.  Defendant removed the case to this Court with jurisdiction predicated 28 U.S.C. §1332, diversity of citizenship. Defendant has filed a motion for summary judgment on the grounds that Plaintiff lacks sufficient evidence to establish causation and that Defendant conducted a good faith investigation as a matter of law.  (ECF No. 23).[1]  Plaintiff has filed a response to the motion.  (ECF No. 24.)  Defendant has filed a reply to the response.  (ECF No. 25.) For the reasons set forth below, Defendant's motion is **GRANTED** on Plaintiff's bad faith claim and **DENIED** on Plaintiff's breach of contract claim.

---

[1] The Court previously denied Defendant's motion for partial summary judgment on Plaintiff's bath faith claim without prejudice because, as of the date of Defendant's motion, Defendant's expert, Martin Ellison with Donan Engineering Company, Inc., had not been deposed. (ECF No. 20.)

Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review all the evidence and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden

of proof at trial." *Celotex*, 477 U.S. at 322.

**<u>Statement of Material Undisputed Facts</u>**

Local Rule 56.1(a) requires that any motion for summary judgment be "accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Any party opposing summary judgment must respond to each fact stated by the movant by agreeing that it is undisputed, agreeing that it is undisputed for purposes of ruling on the summary judgment motion only, or by demonstrating that the fact is disputed, with specific citations to the record. LR 56.1(b). "Failure to respond to a moving party's statement of material facts ... shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d).

The Court finds that there is no genuine dispute as to the following facts, unless otherwise noted. (Pl's Resp. to Def's St. of Mat. Facts, ECF No. 24-2); (Def's Resp. to Pl's St. Mat. Facts, ECF No. 26.) Plaintiff owns a residence located at 1653 Hurley Kirby Road, Bethel Springs, Tennessee. The residence was insured under a policy of insurance issued by Defendant. On or about May 18, 2020, a tree fell at the insured premises and damaged the home. The loss was reported to Defendant.

An initial inspection was performed by Phillip Allen of John Allen Construction Company at the request of Defendant on or about May 19, 2020. Allen recommended that an engineer be retained to determine the extent of damage attributable to the impact of the tree. In particular, concern existed as to whether the house had shifted on its foundation as a result of the impact. In the meantime, an estimate was created as to the known covered damage, and payment was issued for that amount. On May 27, 2020, Martin Ellison, P.E., inspected the premises on

3

behalf of Defendant. On May 28, 2020, Defendant verbally communicated to Plaintiff its determination that only a portion of the claim was covered by the policy as the impact of the tree did not cause the house to shift on its foundation.[2]  On or about June 10, 2020, Defendant sent a formal letter to Plaintiff outlining its coverage position.

Approximately two months later, Defendant received a letter of representation from Plaintiff's counsel. At the behest of Plaintiff, Jeremy Scallion, P.E., of Scallion Engineering performed a structural evaluation of 1653 Hurley Kirby Road.  In his report, dated August 19, 2020, he concluded that "it is my opinion that the roof and walls above the 2nd floor shifted from the impact of the tree." In September 2020, Defendant received this report which attributed additional damage to the home as a result of the impact of the tree.

Defendant forwarded Scallion's report to Ellison for his review and consideration. Subsequently, Defendant received Ellison's updated report confirming that his professional opinion was not changed by the findings of Scallion. Defendant communicated to Plaintiff its reaffirmation of the prior partial denial decision.[3]

After Plaintiff filed this lawsuit, Scallion was deposed. During his deposition and in his report dated August 19, 2020, Scallion opined that the contested damage to the home was caused by the impact of the tree to the corner roof structure of the home.  The parties dispute whether Scallion stated that he could not give that opinion with a reasonable degree of certainty and whether he agreed that other issues may have caused the damage. (Pl's Resp. to Def's St. of Mat.

---

[2]  Plaintiff disputes the validity of the conclusions in Ellison's report.  (Pl's Resp. to Def's St. Mat. Facts Nos. 10, 15, ECF No. 24-2.)

[3]  Plaintiff disputes the validity of Defendant's partial denial decision. (Pl's Resp. to Def's St. Mat. Facts No. 16, ECF No. 24-2.)

4

Facts No. 17, ECF No. 24-2.)

Defendant's expert, Martin Ellison, has testified as an expert at trial or deposition eight times between 2008 and present. In seven of those eight trials/depositions, he was retained by an insurance company, and/or a law firm that was retained by an insurance company.

## **Analysis**

The Court will first consider Plaintiff's bad faith claim. Tennessee insurers have a duty to act in good faith, and, while there is no separate tort for breach of good faith, Tennessee statutory law allows insureds to seek a penalty up to 25% of the total liability when a claim is denied in bad faith. *Wynne v. Stonebridge Life Ins. Co.*, 694 F. Supp. 2d 871 (W.D. Tenn. 2010). Tennessee's bad faith statute provides as follows:

> The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

Tenn. Code Ann. § 56-7-105(a).   Thus, under the statute, to recover bad faith penalties, a plaintiff must prove (1) that the policy of insurance had, by its terms, become due and payable; (2) the plaintiff made a formal demand for payment and then waited sixty days after making the demand before filing suit; and (3) the refusal to pay was made in bad faith. *See Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 270 (Tenn. Ct. App. 2013); *Ginn v. American Heritage Life Ins. Co.*,

173 S.W.3d 433, 443 (Tenn. Ct. App. 2004). The first two factors are not at issue in this case. Therefore, the Court will look to the third factor, *i.e.*, that the refusal to pay was made in bad faith.

A plaintiff must show bad faith through "facts that tend to show a willingness on the part of the insurer to gamble with the insured's money in an attempt to save its own money or any intentional disregard of the financial interests of the plaintiff in the hope of escaping full liability." *Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 370 (Tenn. 2006) (internal quotation omitted).[4] "[A]n insurer's mistaken judgment is not bad faith if it was made honestly and followed an investigation performed with ordinary care and diligence." *Id.* at 371. "Mere negligence is not sufficient to impose liability for failure to settle." *Id.* "The question of an insurance company's bad faith is for the jury if from all of the evidence it appears that there is a reasonable basis for disagreement among reasonable minds as to the bad faith of the insurance company in the handling of the claim." *Id.*

"If an insurance company unsuccessfully asserts a defense and the defense was made in good faith, the statute does not permit the imposing of the bad faith penalty." *Id.* (quoting *Nelms v. Tennessee Farmers Mut. Ins. Co.*, 613 S.W.2d 481, 484 (Tenn. Ct. App. 1978). Instead, "[t]o sustain a claim for failure to pay in bad faith a plaintiff must demonstrate that there were no legitimate grounds for disagreement about the coverage of the insurance policy." *Fulton Bellows, LLC v. Fed. Ins. Co.*, 662 F. Supp. 2d 976, 996 (E.D. Tenn. 2009) (internal quotation and

---

[4] As noted by Defendant, *Johnson* addressed the duty of an insurance company to settle within policy limits. Because the insurer had not refused to pay a claim, the bad faith statute was not applicable. However, cases applying the bad faith statute have relied on the language in *Johnson* defining "bad faith." *See, e.g.*, *LBC Assocs. Chattanooga #1 v. Allied Prop. & Cas. Ins. Co.*, 2021 WL 5154245, at *4 (W.D. Tenn. Aug. 23, 2021).

citations omitted).  "If an insurance company unsuccessfully asserts a defense and the defense was made in good faith, the statute does not permit the imposing of the bad faith penalty." *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986) (citation omitted).

      As summarized in *LBC Assocs. Chattanooga #1*,

> Bearing the burden of showing bad faith, a plaintiff must prove that a defendant failed to "act in good faith and in a diligent manner in its investigation, negotiation, defense, and settlement of claims brought." *State Auto Ins. Co. of Columbus v. Rowland*, 221 Tenn. 421, 427 S.W.2d 30, 33 (Tenn. 1968); *see also Johnson v. Tenn. Farmers Mut. Ins. Co.*, 205 S.W.3d 365 (Tenn. 2006). A bad faith refusal to pay claim will fail "when the insurer's refusal to pay rests on legitimate and substantial legal grounds." *Tyber v. Great Cent. Ins. Co.*, 572 F.2d 562, 564 (6th Cir. 1978); *Lance v. Owner's Ins. Co.*, No. E2015–00274, 2016 WL 3092818, at *13 (Tenn. Ct. App. May 25, 2016). An investigation by the insured can constitute legitimate grounds for refusal of an insurer's claim. *Bowery v. Berkshire Life Ins. Co. of Am.*, No. 3:11–CV–03, 2013 WL 1497339, at *10 (E.D. Tenn. Apr. 11, 2013) (finding an insurer did not act in bad faith when it conducted a seven-month investigation). "Ordinary care and diligence in the investigation require that the insurer investigate the claim to such an extent that it can render honest judgment regarding whether the claim should be settled." *Fox v. Massachusetts Bay Ins. Co.*, No. 2:13-CV-2567-JTF-dkv, 2015 WL 10791983, at *5 (W.D. Tenn. Feb. 23, 2015).

*LBC Assocs. Chattanooga #1*, 2021 WL 5154245, at *4.[5]  Thus, to prevail on its motion for summary judgment, "Defendant must establish that no reasonable jury could look at the available facts and conclude that Defendant's 'refusal to acknowledge or more thoroughly investigate the extent of the ... damage amounted to bad faith.'" *Id.* (quoting *United States v. Roller Works, Inc. v. State Auto Property & Casualty Ins. Co.*, 2018 WL 1288942, at *8 (M.D. Tenn. March 13, 2018)).

---

[5] Martin Ellison was also the defense expert in *LBC Assocs. Chattanooga #1*.

In support of its motion, Defendant points to the evidence in the record showing that it investigated Plaintiff's loss using a third party, Phillip Allen, to initially inspect the premises. At Allen's suggestion, Defendant hired an independent engineer, Ellison, to investigate the loss. Based on Ellison's findings, Plaintiff's claim was partially denied. When challenged by Plaintiff's engineer, Defendant reconsidered its position and asked Ellison to review his findings compared to those of Plaintiff's engineer. Ellison did so, and, based on his additional review and report, Defendant reaffirmed its decision to deny Plaintiff's claim in part.

The Court finds that, as a matter of law, there is no evidence from which a reasonable jury could find that Defendant's decision was not made in good faith even though the opinions of Defendant's expert and Plaintiff's expert conflicted. That is, no reasonable jury could find "a conscious indifference to the insurance claim or that Defendant acted from an improper motive." As pointed out by Defendant, Defendant hired a third party, Phillip Allen, to initially inspect the premises. Defendant then hired an independent engineer, Ellison, to investigate the loss. Based on Ellison's findings, Plaintiff's claim was partially denied. When challenged by Plaintiff, Defendant asked Ellison to compare his findings to those of Plaintiff's engineer. Ellison did so, and, based on his additional review and report, Defendant reaffirmed its decision to deny Plaintiff's claim in part.

Plaintiff has proffered nothing to show that Defendant's reliance on its own expert was not reasonable or was done in bad faith. There is no evidence in the record of Defendant putting its interest ahead of those of its insured or that Defendant's investigation was unreasonable, dishonest, or fundamentally illegitimate. Instead, the evidence shows that Defendant conducted a good faith investigation before partially denying Plaintiff's claim. *See Cox v. Erie Insurance*

*Exchange*, 2019 WL 6529164 (W.D. Tenn. Dec. 4, 2019) (granting the defendant insurer's motion for partial summary judgment on the plaintiff's bad faith claim because the plaintiff did not present evidence that the defendant's investigation was unreasonable, dishonest, or fundamentally illegitimate; instead, the investigation by the defendant's engineer supported an honest and good faith belief that the extent of the damage to the property was not as extensive as the plaintiff homeowner claimed).

Plaintiff posits that Defendant's expert may have been biased in favor of Defendant because he had previously testified in favor of the denial of coverage by insurance companies. The Court agrees with Defendant that there is no proof in the record that the testimony did such and no proof that this was the reason Defendant chose this expert witness. Plaintiff's speculation as to possible bias is not sufficient to establish bad faith.

Because Plaintiff has pointed to no question fact as to whether Defendant's conduct was in violation of the bad faith statute, Defendant is entitled to summary judgment on Plaintiff's bad faith claim. *See Powell v. Nationwide Mut. Fire Ins. Co.*, 2017 WL 7050057, at *3 (M.D. Tenn. Sept. 19, 2017) ("A bad faith claim for a refusal to pay cannot be sustained when the insurer's refusal to pay rests on legitimate and substantial legal grounds.").

Next, the Court will consider whether Defendant is entitled to summary judgment on Plaintiff's breach of contract claim as to the extent of damage. Defendant contends that Plaintiff cannot show that Defendant breached the contract of insurance by refusing to pay the claimed damages because Plaintiff has not provided the opinion of an expert that those claimed damages were the result of direct physical loss from the impact of the tree shifting the foundation of the house.

Under Tennessee law, "courts should construe insurance contracts in the same manner as any other contract." *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). A claim for breach of contract requires the plaintiff to prove the existence of an enforceable contract, non-performance amounting to a breach of that contract, and damages as a result of the breach. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). In this case, the existence of a valid insurance contract is not disputed. Instead, the question presented by Defendant's motion is whether the partial denial of Plaintiff's claim amounts to a breach of that contract. Accordingly, to survive summary judgment, Plaintiff must show the existence of a material factual dispute as to whether the claimed event caused the damage to his house.

"[O]ne of the most basic principles of insurance law . . . is that the insured has the burden of demonstrating that a covered loss has occurred." *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 22 (Tenn. Ct. App. 2002) (citations omitted). "Two corollaries to this principle are (1) that an insurance company has the burden of proving that an exclusion in its policy applies to a claim, and (2) that once an insurance company demonstrates that an exclusion applies, the burden shifts to the insured to demonstrate that its claim fits within an exception to the exclusion." *Id.* at n.10 (citations omitted). In the present case, the question is whether the shifting of the foundation of the house was a "covered loss" – not whether house foundation shifting was excluded from the policy – and Plaintiff has the burden of proof on this issue.

Plaintiff has proffered Scallion's opinion as to the cause of the shifting of the house. The expert report of Scallion stated that, based on his observations, "it is my opinion that the roof and walls above the 2nd floor shifted from the impact of the tree." (Scallion Rep. Page ID 239, ECF

No. 24-5.) And, during his deposition, Scallion opined that the contested damage to the home was caused by the impact of the tree. However, Scallion agreed that he could not give that opinion with certainty and stated that other issues may have caused the damage. Scallion specifically testified as follows:

> Q. [Defense Counsel] And if I'm understanding ultimately what, and tell me if I'm misstating this, what you found at this house could have been caused by a tree strike, but it wasn't necessarily caused by a tree strike. You just can't say.
>
> A. I cannot definitively say that it was caused by that, nor could I definitively say it was not.
>
> Q. It could be one way or the other, right? That's the best you can say?
>
> A. Yes. I don't see how anyone could definitively say one way or the other.

(Scallion Dep. PageID 198, ECF No. 23-4.)

Upon further questioning, Scallion agreed that the things found in his report "could be caused by the tree strike but could not be caused by the tree strike and have other explanations and [he] can't really say one way or the other." (Scallion Dep. Page ID 349, ECF No. 24-6.) However, "based on the items I saw and the way it displaced, it is my opinion that the most likely cause of that displacement was the impact of a tree." (*Id.*) Scallion then clarified that everything that he cited supporting his opinion that the damage was caused by the impact of a tree "just as easily" supported an opinion that the damage was not caused by the impact of a tree." (*Id.* at 350.)

Defendant notes that, in his deposition, Scallion affirms the opinions expressed in his report generally but then states that he cannot render an opinion regarding causation with any degree of certainty. Defendant asks the Court to reject Scallion's opinion on this ground and under the theory of "cancellation."

> The Sixth Circuit has remarked that "the majority of courts require that an expert opinion express a probability, which is more than a mere possibility." *Johnson v. Memphis Light Gas & Water Div.*, 695 F. App'x 131, 137 (6th Cir. 2017). But this is not a "'magic words' test." *Id.* at 136 (quoting *Thompson v. Underwood*, 407 F.2d 994, 997 (6th Cir. 1969)). "And the fact that an expert 'does not use absolute terms but rather couches the opinions in terms of "can" or "may" does not render it speculative or unreliable.'" *In re Heparin Prods. Liab. Litig.*, 803 F. Supp. 2d 712, 745 (N.D. Ohio 2011) (quoting *In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 1489730, *8 (S.D. Fla. Mar. 19, 2010)). In other words, the district court must assess the whole of the expert's opinion, not isolated instances of word choice.

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 2021 WL 2646797, at *3 (S.D. Ohio June 28, 2021). In the present case, the Court does not agree with Defendant that Scallion's opinion should be rejected because he did not state that opinion using words such as "to a reasonable degree of certainty" because that phrase is not required under Tennessee law.

Alternatively, Defendant relies on the "cancellation rule" as set forth in *Church v. Perales*, 39 S.W.3d 149 (Tenn. Ct. App. 2000), to reject Scallion's opinion. The *Church* court explained this "rule" as follows:

> The Tennessee Supreme Court has characterized mutually contradictory statements by the same witness as "no evidence" of the fact sought to be proved. However, in order to be disregarded under the so-called cancellation rule, the allegedly contradictory statements must be unexplained and neither statement can be corroborated by other competent evidence. When the cancellation rule is invoked at the summary judgment stage to challenge evidence opposing the motion, the courts must view the challenged evidence in the light most favorable to the opponent of the motion.

*Id.* at 170 (citations omitted). Thus, contradictory statements made by the same witness regarding a specific fact cancel each other out resulting in there being no evidence of the fact sought to be proved. *Id.* at 169-70. Defendant argues that Scallion's refusal to definitely state that the damage to the foundation was caused by a tree striking it contradicts his opinion that

"the roof and walls above the 2nd floor shifted from the impact of the tree" and is subject to the cancellation rule.

The *Church* court was presented with a similar situation in a medical malpractice case and determined that the "cancellation rule" did not apply.

> The dispute on which Dr. Dunbar relies involves Dr. Wolf's opinion concerning when Ms. Church's physicians violated the applicable standard of care. Dr. Wolf stated in his May 10, 1997 affidavit that Drs. Perales, Dunbar, and Ross "deviated from the recognized and acceptable standard of medical care ... in that they failed to timely diagnose the perforation of the small bowel." He also stated that "the delay in diagnosis of nine days following the first surgery was excessive considering the clinical evidence strongly suggestive of an intra-abdominal process as the source of the patient's problems." However, as a result of skillful cross-examination during his February 25, 1997 deposition, Dr. Wolf stated that applicable standard of care was not violated until March 29, 1995, seven days after Ms. Church's first surgery. We do not believe that these statements are irreconcilably inconsistent in light of the fact that Ms. Church's malpractice claim is for delay in diagnosis and treatment.
> …
>
> A number of Dr. Wolf's opinions lack precision, and this lack of precision may eventually undermine the weight of Dr. Wolf's testimony in the eyes of a jury. However, it is not our task to weigh the evidence at this stage of the proceeding, and we do not find Dr. Wolf's testimony to be so "very flat and unexplained" as to require us to disregard it completely.

*Church*, 39 S.W.3d at 170-71 (footnote omitted).

Likewise, this Court finds that the cancellation rule does not apply to Scallion's testimony or opinions in this matter because his acknowledgment that something else may have caused the damage does not contradict his opinion that the impact of the tree did indeed cause the foundation damage. Scallion explained that he stood by his opinion as to the causation of the damage to the foundation while acknowledging that his opinion could not be stated with complete certainty. As noted in *Church*, any inconsistencies may undermine the weight that the

jury gives to his opinion, but the existence of the competing expert opinions creates a question of fact for the jury.  Defendant's motion on this ground is denied.

In summary, Defendant's motion for summary judgment is **PARTIALLY GRANTED** and **PARTIALLY DENIED**.  The motion is **GRANTED** on Plaintiff's bad faith claim and **DENIED** on the breach of contract claim.

IT IS SO ORDERED.

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

DATE:  March 3, 2022.